Michael D. Rounds (Bar No. 133972)
Melissa P. Barnard (pro hac vice)
Adam K. Yowell (pro hac vice)
WATSON ROUNDS
One Market-Steuart Tower Suite 1600
San Francisco, CA 94105
Telephone:  (415) 243-4090
Fax:          (415) 243-0226
mrounds@watsonrounds.com
mbarnard@watsonrounds.com
ayowell@watsonrounds.com


Attorneys for Defendant/Counter-claimant
GRAPHON CORPORATION

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYSPACE, INC., <br><br>         Plaintiff, <br>     v. <br><br> GRAPHON CORPORATION, <br><br>        Defendant. <br> _____ <br> CRAIGSLIST, INC., <br><br>        Plaintiff, <br>     v. <br><br> GRAPHON CORPORATION, <br><br>        Defendant. <br> _____ <br><br> RELATED COUNTERCLAIMS <br> _____ | **Case No. 3:10-CV-00604-EDL** <br> **Case No. 3:10-CV-01156-EDL** <br> **Consolidated Actions** <br><br><br> **GRAPHON CORPORATION'S OPPOSITION TO MOTION FOR EARLY HEARING ON INEQUITABLE CONDUCT** <br><br><br><br> Date:  Thursday, July 15, 2010 <br> Time   9:00 a.m. <br> Location: Courtroom E, 15th Floor <br> Judge: Magistrate Elizabeth D. LaPorte |

Defendant/Counter-claimant GraphOn Corporation ("GraphOn") hereby opposes the Motion for Early Hearing on Inequitable Conduct filed by MySpace, Inc., Fox Audience Network, Inc. and craigslist, Inc. ("Plaintiffs") as follows:

## I.   INTRODUCTION

Plaintiffs' Motion is a carbon copy of a motion previously filed – and denied – in a pending case in the Eastern District of Texas.  There is every reason for the Court to again deny this same Motion.  Plaintiffs' rush to try the inequitable conduct issue is not only premature, but is fraught with numerous evidentiary problems.

To begin with, a trial on inequitable conduct should not proceed until after the Court has completed claim construction for the patents-in-suit in order to determine what information is material for purposes of disclosure to the USPTO.[1]  For two of the patents-in-suit (the '034 and '591 patents), none of the claims have been interpreted by any court, and at least claims 2 and 3 of the '538 patent have not been interpreted by any court to determine whether they require the secure online credit processing for which Plaintiffs claim GraphOn failed to sufficiently disclose the best mode.  There are other open claim construction issues from the previous Texas litigation involving the '538 and '940 patents as well.[2]  Until the parties meet and confer pursuant to Local Rule P.R. 4-1, it cannot be determined whether still further interpretation issues for the '538 and '940 patents exist, which they likely do given GraphOn's preliminary assessment of Plaintiffs'

---

[1] Plaintiffs also filed a Motion for Summary Judgment Of Invalidity (Dkt. #39, '604 Action).  GraphOn plans to depose the primary declarant before opposing the Motion for Summary Judgment.  However, that Motion also is premature because no claim construction has been undertaken for several key terms in the four patents.

[2] As just one example, there remains an open issue as to whether the '940 patent has the "entirely user controlled" limitation of the '538 patent. Case No. 2:07-CV-367, Document No.41, ftnt. 1; Rounds Decl., ¶ 3.

Motion for Summary Judgment on Invalidity.

In addition to a precedent claim construction, GraphOn must retain experts and may need to conduct third party discovery before it can fully prepare the issue of inequitable conduct for trial.  It makes no sense to conduct this discovery in a vacuum while ignoring the other issues in the case.  In fact, Plaintiffs have it backwards - GraphOn should be allowed to present its infringement and damages case *before* Plaintiffs present their inequitable conduct defense, as with the typical patent case.  *See*, Motion to Realign (Dkt. # 40).   Because of the substantial overlap in evidence for the claim construction, infringement, invalidity and inequitable conduct issues, it only makes sense to try inequitable conduct to the Court *after* a claim construction hearing and a jury trial on infringement, invalidity and damages.  *Id.*   The vast majority of case law adopts this approach.

Despite their effort to deny GraphOn due process, Plaintiffs' claims of inequitable conduct ring hollow at this early juncture.  Reminiscent of a Fox News story, Plaintiffs claim that at least GraphOn, six patent attorneys and two inventors engaged in a far reaching conspiracy to defraud the United States Patent Office.  These allegations cannot be proven with any evidence, let alone clear and convincing evidence.

Upon completion of fact and expert discovery, the evidence will show that GraphOn provided to the USPTO all prior art references cited by the defendants in the *eBay* litigation, and that the information contained in the '956 application was immaterial to the patents-in-suit.[3] Additionally, the material evidence related to the written description and best mode issues previously raised by AutoTrader - the specification, claims and the previous file histories - was

---

[3] In the previous GraphOn v. AutoTrader case in the Eastern District of Texas, AutoTrader first provided invalidity contentions disclosing its prior art on September 27, 2006, after the '034 patent had issued.

before the examiners during prosecution of each of the patents-in-suit.  As it relates to the bare existence of the litigation, the evidence will show that the USPTO was aware of the litigation involving the '367 family and specifically advised GraphOn's prosecution counsel of its awareness.  Moreover, GraphOn ultimately disclosed to the USPTO the existence of the *AutoTrader.com* litigation through the filing of Litigation Report Forms with the Court, and the Court Clerk in the *eBay* litigation provided statutory notice of the case to the USPTO.  In GraphOn's view, Plaintiffs' inequitable conduct case is technical gibberish, and the type of case that the Federal Circuit is currently in the process of scrubbing out of the system.

The evidence will show that there is no colorable argument that GraphOn withheld material information from the USPTO, or that it intended to deceive the USPTO.  In the end, Plaintiffs' request for an early hearing on inequitable conduct is a ploy to distract the Court and the parties from the real issue in this case – Plaintiffs' infringement - and an attempt to prematurely put GraphOn on defense in this case.  This Court should deny Plaintiffs' Motion.

## II.    STATEMENT OF FACTS

### A.    Procedural Background

As a result of GraphOn's licensing efforts, MySpace filed its declaratory judgment action on February 10, 2010, based upon United States Patent No. 6,324,538 ("the '538 patent"), United States Patent No. 6,850,940 ("the '940 patent"), United States Patent No. 7,028,034 ("the '034 patent") and United States Patent No. 7,269,591 ("the '591 Patent").  Complaint (Dkt #1, 3:10-CV-00604-CRB).  On March 17, 2010, GraphOn filed an Answer and Counterclaim seeking damages for infringement of the patents-in-suit.  Answer and Counterclaim (Dkt #11, '604 Action).  The countersuit was against MySpace and Fox Audience Network, Inc. ("FAN").  *Id*. MySpace filed its Answer to the Counterclaim. on April 12, 2010.  Answer (Dkt #25, '604

Action).   FAN filed its Answer and Counterclaim. Answer and Counterclaim (Dkt #29, '604 Action).  GraphOn answered the Counterclaim Answer to Counterclaim (Dkt #47, '604 Action).

Similarly, as a result of GraphOn's licensing efforts, craigslist filed a declaratory judgment action on March 18, 2010 based upon the '538, '940, '034 and '591 patents. Complaint (Dkt #1, 3:10-CV-01156-CRB).  On April 8, 2010, GraphOn filed an Answer and Counterclaim seeking damages for infringement of the patents-in-suit. Answer and Counterclaim (Dkt #7, '1156 Action).  Craigslist filed its Answer to Counterclaim on April 29, 2010.  Answer to Counterclaim (Dkt #14, '1156 Action).  On the same day, craigslist filed a separate First Amended Complaint. First Amended Complaint (Dkt #15, '1156 Action).  GraphOn filed its Answer to the First Amended Complaint on May 24, 2010. Answer to First Amended Complaint (Dkt #21, '1156 Action).[4]  GraphOn made a demand for a jury trial in both cases.  An order granting related case status to these two cases was granted on April 15, 2010.  Order (Dkt. #26). Eventually, the two cases were consolidated by joint stipulation and order.  Order (Dkt. #36).

For reference purposes, the '538 patent issued on November 27, 2001, the '940 patent issued on February 1, 2005, the '034 patent issued on April 11, 2006, and the '591 patent issued on September 11, 2007.  Answer and Counterclaim, Exhibits A-D (Dkt #11, '604 Action); Answer to Counterclaim, Exhibits A-D (Dkt #14, '1156 Action).

**B.      Previous Litigation**

Beginning in March 1999, GraphOn's predecessor NES was involved in litigation against eBay involving a patent not at issue in this case, U.S. Patent No. 5,778,367 (the "'367 patent"). *See Network Engineering Software, Inc. v. eBay, Inc.*, No. 99-1433-MJJ-BZ (N.D. Cal.) (the

---

[4] The allegations in craigslist's First Amended Complaint mirror the allegations in MySpace's Complaint.

"*eBay* litigation"). The *eBay* litigation settled in January 2000 before a Markman hearing was conducted.  Rounds Decl., ¶ 8.

Beginning in 2005, GraphOn was involved in litigation against AutoTrader.com concerning the '538 and '940 patents, *GraphOn Corp. v. AutoTrader.com, Inc.*, Nos. 05-cv-530-TJW, 07-cv-367-TJW (E.D. Tex.) (the "*AutoTrader.com* litigation").  Rounds Decl., ¶ 10. During the *AutoTrader.com* litigation, this Court construed some of the claims of the '538 and '940 patents, but some claim construction issues remained unresolved following settlement of that litigation on the eve of trial.  Rounds Decl., ¶ 3; Exhibit 1, p. 2.  One outstanding issue regarding the '538 patent was whether, as a matter of law under *Allvoice Computing PLC v. Nuance Communications, Inc.*, 504 F.3d 1236 (Fed. Cir. 2007), claims 2 and 3 require secure online credit card processing such that the best mode requirement applies.  Exhibit 1, p. 2.  The Court must resolve this issue, as well as the similar issue related to the '034 and '591 patents-in-suit that require receiving a "fee," in order to decide Plaintiffs' inequitable conduct argument on the issue of best mode.  Rounds Decl., ¶ 9.  Another outstanding claim construction issue was whether the "entirely user controlled" limitation of the '538 patent applied to the '940 patent. *Id.,* ¶ 3.  Based upon Defendants' Motion for Summary Judgment which addresses the issue of the Mother of all Bulletin Boards prior art, GraphOn expects that there will be several other terms that will need to be interpreted by the Court at the Markman hearing for the '940 and '538 patents. *Id.*

Also during the *AutoTrader.com* litigation, defendant AutoTrader.com deposed various counsel who were involved in the prosecution of the '538 and '940 patents, including GraphOn's general counsel Timothy Brisson; Ken D'Alessandro and William Wilbar (formerly of Sierra Patent Group); McDonnell, Boehnen, et al.'s Robert Irvine; Robert Worrall (formerly of Burns,

Doane, et al.); and Cardinal Law Group's Frank Nicholas.  Rounds Decl., ¶ 4.  In advance of any trial on inequitable conduct, GraphOn may need to depose at least William Wilbar, who currently resides in Singapore, as well as Robert Irvine, Robert Worrall and Frank Nicholas, none of whom are presently counsel for GraphOn.  Rounds Decl., ¶ 4.  The depositions taken by Plaintiffs' counsel in the *AutoTrader.com* litigation did not address many of the inequitable conduct issues that the Plaintiffs have pled in the instant case because only the non-disclosure of the '956 application and file history was at issue in the Texas case.  *Compare,* Dkt. #1, '1156 Action; Dkt. #135, Case 2:05-cv-0053-TJW.[5]  Until discovery commences in this case, and a trial date is set, it is unclear whether GraphOn may need to depose these witnesses as well as at least one inventor to defend against Plaintiffs' inequitable conduct claim.

**C.      Status of GraphOn's Defense**

In addition to requisite fact discovery to address the pled inequitable conduct issues, GraphOn currently intends to rely upon on experts to cover at least the issues of materiality of the prior art and the '956 application and whether prosecution counsel acted reasonably in the prosecution of the applications at issue.  Rounds Decl., ¶ 5.  These experts have not yet been retained.  *Id.*  Moreover, for all patents, GraphOn will need factual discovery related to the scope and content of the prior art and the level of ordinary skill in the art at the time of the invention to properly address the issue of materiality.   Rounds Decl., ¶ 6.

This case is at its early inception.  Rounds Decl., ¶ 6.  The Joint Case Management

---

[5] It is ridiculous for Plaintiffs to suggest that the issue of inequitable conduct could be tried on the deposition transcripts from the *AutoTrader.com* litigation. Motion, pp. 3-4. To begin with, AutoTrader never questioned the patent prosecution witnesses about the alleged non-disclosure of either litigation.  AutoTrader also never questioned the patent prosecution witnesses about two of the patents in this case.  Further, GraphOn will make efforts to have these witnesses testify live at trial given the seriousness of charges Plaintiffs have raised.

GraphOn's Opposition to Motion for Early Hearing On Inequitable Conduct
3:10-CV-00604-EDL; 3:10-CV-01156-EDL

Conference was just held. Initial Disclosures were served on May 27, 2010. *Id.* No documents have been exchanged, no depositions have been taken and no discovery has been propounded. *Id.* Furthermore, infringement contentions are not due until June 25, 2010. *Id.* As noted, no claim construction of the terms at issue in the four patents-in-suit has been undertaken yet. There is substantial overlap in the issues of claim construction, invalidity and inequitable conduct and nothing has been done to date to advance the case on any of the above issues. *Id.*

The four patents-in-suit are involved in one other current lawsuit, *GraphOn Corp. v. Yahoo!, et al.,* Case No. 08-cv-97-TJW-CE (E.D. Tex.), however not much has happened in that case either, other than settlements. MySpace counsel filed the identical motion in the Yahoo! case for an early hearing, which was denied. Rounds Decl., ¶ 12. All but one defendant has settled with GraphOn, making a total of seven licensees under the patents-in-suit. Rounds Decl., ¶ 11. The case is still in the early stages. The discovery deadlines and claim construction deadlines have not passed and deadlines for designating experts are not until June of 2011. *Id.* In sum, nothing has occurred in the pending Texas case allowing GraphOn to substantively address Plaintiffs' claims of inequitable conduct.

## III. LEGAL DISCUSSION

### A. The Issue of Inequitable Conduct Should Not Be Bifurcated.

Plaintiffs' premature request for an early trial on inequitable conduct is based upon Rule 42(b), which Plaintiffs fail to even cite to in their Motion. Pursuant to Rule 42(b), a court may order a separate trial of any separate issue "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b). Factors to be considered when deciding whether to bifurcate a trial include: complexity of issues, factual proof, risk of jury confusion, difference between the separated issues, the chance that

separation will lead to economy in discovery, and the possibility that the first trial may be dispositive of the case.  *SanDisk Corp. v. STMicroelectronics Inc.*, 2009 WL 1404689, 2 (N.D.Cal. 2009); *Calmar, Inc. v. Emson Research, Inc.,* 850 F.Supp. 861, 866 (C.D.Cal. 1994). Bifurcation should be ordered only when the separation will result in judicial economy and will not unduly prejudice any party.  *Calmar,* 850 F.Supp. at 865.  Application of these factors warrants denial of Plaintiffs' Motion.

### 1.        Claim Construction

Plaintiffs utterly fail to support their contention that "an early hearing is particularly warranted" in this case.  *See* Motion at p. 3.  First, Plaintiffs do not—and cannot—explain how a claim construction hearing is unnecessary to decide inequitable conduct, when the subject matter of the patents is clearly relevant to the inequitable conduct analysis, particularly for purposes of determining what information is material and whether the claimed inventions invoke a best mode issue.   It is well-settled that the claims of the patents-in-suit must be interpreted in order to evaluate whether or not material information was disclosed for purposes of analyzing inequitable conduct.  *See Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 963 (Fed. Cir. 2001) ("[T]he extent of information that an inventor must disclose depends on the scope of the claimed invention."); *cf. Research Corp. Technologies, Inc. v. Microsoft Corp.*, 2008 WL 2939524 at *3 (Fed. Cir. 2008) ("The first prong, *materiality*, is a required element of the inequitable conduct analysis.").  In fact, claim construction applies to all issues – infringement, invalidity and inequitable conduct.  An early isolated trial without it defies bedrock patent law at every turn.

9

The authority cited by Plaintiffs in their Motion only emphasizes the importance of claim construction prior to an inequitable conduct trial.[6]   MPEP § 2001.06(c) instructs that "where the *subject matter* for which a patent is being sought is, or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the Patent and Trademark Office." *Id*. (emphasis added). "The claims represent 'the *subject matter* which the applicant regards as his invention.'" *Allvoice Computing*, 504 F.3d at 1246 (Fed. Cir. 2007) (*quoting* 35 U.S.C. § 112 pp. 1-2) (emphasis added). Thus, the *subject matter* of the patent, i.e. the claims, must first be interpreted by the Court before it can determine what is and is not material for purposes of disclosure, even assuming MPEP § 2001.06(c) is important to the issues of materiality or intent.  As such, Plaintiffs' first basis for inequitable conduct, namely the intentional failure to disclose related litigation, cannot be decided until the Court interprets the claim terms at issue.

By way of example only, the Court must interpret certain claims for at least three of the patents-in-suit in order to decide Plaintiffs' second basis that GraphOn engaged in equitable conduct by failing to disclose the '956 application and relevant information therein.  Plaintiffs allege that the '956 application should have been disclosed to the USPTO during the prosecution of each of the patents-in-suit because each of the patents included in its specification a reference to credit card processing using "a proprietary method developed by the assignee to provide the highest level of security possible." Motion at p. 7.  Plaintiffs' argument that GraphOn had a duty to disclose the '956 application assumes that the'956 application is related to the patents-in-suit.

---

[6] The MPEP does not have the force of law, but contains instructions to examiners and provides information and interpretation. See *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1425 (Fed. Cir. 1988). The Code of Federal Regulations on the other hand, has no requirement concerning the disclosure of litigation when prosecuting a continuation application.  *Id*

The duty to disclose under the MPEP only arises if the prior application is related to the current patent. In fact, the '956 application is from a different patent family and therefore, GraphOn had no duty to disclose the '956 application.

Furthermore, before the Court can determine whether GraphOn violated the best mode requirement by failing to disclose certain information in the '956 application, it must first determine whether the best mode requirement even applies to the secure credit card processing described in the specification. In order to do so, the Court must interpret the claims at issue for at least three of the patents-in-suit. *See, e.g., Allvoice Computing*, 504 F.3d at 1246 ("Only the claimed invention is subject to the best mode requirement."); *DeGeorge v. Bernier,* 768 F.2d 1318, 1325 (Fed. Cir. 1985) (reversing the Patent Appeals Board for extending the best mode beyond the proper claim scope); *Randomex, Inc. v. Scopus Corp.,* 849 F.2d 585, 588 (Fed. Cir. 1988) ("It is concealment of the best mode of practicing the claimed invention that section 112 ¶ 1 is designed to prohibit."); *Zygo Corp. v. Wyko Corp.,* 79 F.3d 1563, 1567 (Fed. Cir. 1996) ("[T]he parameters of a section 112 inquiry are set by the CLAIMS."); *see Engel Indus., Inc. v. Lockformer Co.,* 946 F.2d 1528, 1531 (Fed. Cir. 1991) ("The best mode inquiry is directed to what the applicant regards as the invention, which in turn is measured by the claims."). While the Texas Court conducted claim construction for two of the patents-in-suit, the '538 and '940 patents, it did not complete the claim construction because it did not decide the issue of whether claims 2 and 3 require secure online credit card processing as discussed in the specification. *See* Exhibit 1, p. 2.

There are most certainly other claim construction issues that will arise as well. Because the Court must first interpret the claims for the patents-in-suit in order to decide inequitable conduct, a trial on inequitable conduct cannot occur until after a *Markman* hearing, at the

GraphOn's Opposition to Motion for Early Hearing On Inequitable Conduct
3:10-CV-00604-EDL; 3:10-CV-01156-EDL

earliest.  And, as noted below, it makes no sense to have this trial first and in isolation to the jury trial on issues of infringement and invalidity.

### 2.  Fact and Expert Discovery Is Necessary Before the Parties and the Court Can Try Inequitable Conduct

Plaintiffs summarily claim that all relevant discovery on inequitable conduct has occurred because the named inventors and the attorneys participating in the preparation of the applications for the patents-in-suit already have been deposed and the relevant facts have been adduced in the AutoTrader case.  Motion, p. 4.   The most glaring problem with this statement is the fact that the AutoTrader case did not involve all of the patents-in-suit that are before this Court today.  Clearly, discovery cannot be complete on patents that were not even in the AutoTrader case.

In the *AutoTrader.com* litigation, the parties did in fact conduct some discovery relating to the prosecution of the '538 and '940 patents.  However, for this case, GraphOn may need to depose many of the third party witnesses who participated in the prosecution of those patents, as well as the '034 and '951 patents, which were not at issue in the *AutoTrader.com* litigation.  Many of these witnesses are not easily available or required to attend trial in California.  Rounds Decl., ¶ 4.  It is important to note that AutoTrader did not even plead or raise the issue of alleged non-disclosure of the *eBay* or *AutoTrader.com*  litigation, and that issue has therefore not been previously explored in discovery.  *See,* Dkt. #1, '1156 Action; Dkt #135, Case 2:05-cv-00-530-TJW.  Nor have many of the other issues raised by Plaintiffs, such as non-disclosure of summary judgment motions and prior art.

Because MPEP § 2001.06(c) is a guideline for how to proceed in the USPTO, but does not establish a hard and fast line that if crossed establishes inequitable conduct, GraphOn intends to rely on expert testimony as part of its defense of the inequitable conduct claims. Rounds Decl., ¶ 5.  GraphOn intends to rely on an expert to opine regarding whether

GraphOn's disclosures met the standard of care, as well as a person of ordinary skill in the art to at a minimum explain why the '956 application is not material to, and did not require disclosure for, the patents-in-suit, as well as address the materiality of at least a number of pieces of prior art. *Id.*

Inequitable conduct is a serious issue, placing the reputations and livelihoods of prosecution counsel and the inventors at issue.  As the Federal Circuit has made clear, courts must be vigilant in not "permitting the (inequitable conduct defense) to be applied too lightly…courts must ensure that an accused infringer asserting inequitable conduct has met its burden on materiality and deceptive intent with clear and convincing evidence before exercising its discretion on whether to render a patent unenforceable." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008).  Inequitable conduct is a fact intensive inquiry in which the Court must find a specific intent to deceive.  *Id.*; see *Ormco Corp. v. Align Technology, Inc.*  2009 WL 466070, 11 (C.D.Cal. 2009) ("In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference").  The requisite scrutiny necessary to determine inequitable conduct cannot remotely be met by Plaintiffs' proposed hearing before claim construction, discovery and retention of experts have been undertaken.

Furthermore, in a recent opinion issued by the Federal Circuit, Chief Judge Randall R. Rader wrote a concurring opinion to declare that inequitable conduct cases should be held in abeyance and the Federal Circuit should refrain from resolving inequitable conduct until the Federal Circuit hears en banc, *Therasense, Inc. v. Becton, Dickinson & Co.*, 2010 WL 1655391 (Fed. Cir. 2010). See, *Advanced Magnetic Closures, Inc. v. Rome Fastener Corporation,* 2010 WL 2331169, *13 (June 11, 2010).  In the en banc rehearing for *Therasense*, the Federal Circuit

must address the transformation of inequitable conduct from the rare exceptional case of egregious fraud to "a rather automatic assertion in every infringement case." *Id.* In Chief Judge Rader's opinion, inequitable conduct cases should not be decided until after the Federal Circuit determines whether the inequitable conduct doctrine should return to the exception category. *Id.* Even though it is not necessary (in any way) to deny Plaintiffs' Motion, this strong language from the Chief Judge of the Federal Circuit is just one more reason why a trial on inequitable conduct should not be held at this time and will require strict scrutiny when it is.

### 3.   An Early Hearing on Inequitable Conduct Would Be a Waste of Judicial Resources

Courts have another good reason for conducting trials on infringement and invalidity before conducting trials on inequitable conduct—the infringement and invalidity issues may cause the issue of inequitable conduct to become moot, preventing the need for a trial on inequitable conduct all together. Moreover, there is a substantial overlap in evidence between the invalidity and inequitable conduct trials here. At a minimum, evidence on the best mode, written description, anticipation and obviousness invalidity issues will be relevant to Plaintiffs' inequitable conduct claim. It makes little sense to introduce all of this evidence in an inequitable conduct trial and then again before a jury. That is why the majority of courts try inequitable conduct after a jury trial on infringement, invalidity and damages, as noted below.

Moreover, despite Plaintiffs' misguided estimation, a trial on inequitable conduct will undoubtedly take more than one day if there is no precedent trial on infringement and invalidity. Rounds Decl., ¶ 7. GraphOn's defense of the inequitable conduct claims alone will likely take more than a few full days to present. *Id.* Given the number of third-party witnesses involved in the prosecution of the patents-in-suit, as well as the expert witnesses expected to provide helpful

testimony on the subject, it is more reasonable to assume a minimum of three to five days for trial on inequitable conduct if the overlapping invalidity evidence must be presented as well. *Id*. Taking multiple days for a premature trial on inequitable conduct, and doing it all over again with a jury, would be a waste of judicial resources.

In accord with the above logic, the most efficient and appropriate order of proof is to conduct the inequitable conduct trial after the infringement and invalidity case, as numerous courts have held. *See e.g., Visto Corp. v. Seven Networks, Inc.*, 2006 WL 3741891 (E.D. Tex. 2006); *Avid Identification Systems, Inc. v Phillips Electronics North America Corp.*, 2007 WL 2901415 (E.D. Tex. 2007); *Mag Instrument, Inc. v. J. Baxter*, 123 F.R.D. 543 (N.D. Tex. 1988); *Henrob Ltd. v. Bollhoff Systemtechnick GmbH & Co.*, 2008 WL 553248 (E.D. Mich. 2008); *Band Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 2007 WL 3208540 (D. Ariz. 2007). The logic is simple – overlap of issues and judicial economy. *Id*.

Plaintiffs cite to *Agfa* and *Gardco* for the proposition that the Federal Circuit has endorsed their position of birfucation and early consideration of the inequitable conduct issues. Motion, p. 3. However, *Agfa* and *Gardco* do not stand for this specific proposition as Plaintiffs claim. Instead, the issue in these cases was whether it was appropriate to bifurcate the trial. *See, Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.* L 3208540, 5 -6 (D.Ariz. 2007). The court in *Bard* explained that although the Federal Circuit upheld the district courts' decisions to bifurcate, neither *Agfa* nor *Gardco* stand for the proposition that inequitable conduct should be tried first. *Id*. In fact, *Gardco* includes a significant discussion about whether it was error to hold the inequitable conduct portion first. *Id*.

Furthermore, while Plaintiffs cite to two cases from this District where an inequitable conduct trial was conducted first, there are several other cases in this District that take the

15

opposite position and hold the inequitable conduct trial after the infringement trial.  *See, Informatica Corp. v. Business Objects Data Integration, Inc.*, 2007 WL 607792 (N.D.Cal. 2007*); Immersion Corp. v. Sony Computer Entertainment America, Inc.,* 2006 WL 618599 (N.D.Cal. 2006); *02 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.,* 2007 WL 2070275 (N.D.Cal. 2007).  As with *Agfa* and *Gardco*, the cases cited by Plaintiffs do not stand for the proposition that the inequitable conduct issue must be tried first.  Instead, they are merely examples of cases where the inequitable conduct issue was tried first, based upon the particular facts at issue in that case.  For example, the *SanDisk* case is distinguishable from the present situation because the defendant asked the court to resolve its *Walker Process* fraud claim with the inequitable conduct defense before the trial.  In that situation, the court found that holding the inequitable conduct trial first would benefit the *Walker Process* claim.  There is no *Walker Process* fraud claim asserted here.

The different holdings in this District on when to try inequitable conduct issues reinforce that this issue is dependent on the court's discretion in applying the bifurcation factors discussed above.  As stated above, these determinative factors are complexity of issues, factual proof, risk of jury confusion, difference between the separated issues, the chance that separation will lead to economy in discovery, and the possibility that the first trial may be dispositive of the case.  See, *SanDisk*, 2009 WL 1404689, 2.  Again, bifurcation should be ordered only when the separation will result in judicial economy and will not unduly prejudice any party. *Calmar*, 850 F.Supp. at 865.  These factors cannot be met in this case when the case is undeveloped, there is a massive overlap in evidence amongst the issues and an early trial could be a substantial waste of resources.  Furthermore, to proceed with a trial and adjudicate issues that will be adjudicated later before a jury is clearly a prejudicial duplication of costs and resources for GraphOn.

**B.     The Evidence Will Show GraphOn Did Not Engage In Inequitable Conduct**

Although GraphOn will present its argument regarding inequitable conduct more fully at the appropriate time when the record is fully developed, GraphOn summarily addresses without prejudice, Plaintiffs' allegations in their Motion that GraphOn engaged in inequitable conduct with respect to each of the patents-in-suit because:  1) GraphOn failed to disclose "the existence of, and relevant materials from" the *eBay* litigation and the *AutoTrader.com* litigation (Motion at pp. 4-5); and 2) GraphOn failed to disclose the patent application at Serial No. 08/595,956 (the "'956 application") to the USPTO during the prosecution of the four patents-in-suit (Motion at pp. 8-9).  Upon completion of discovery and retention of experts, the evidence will show that Plaintiffs' assertions are erroneous.

**1.     GraphOn Disclosed All Material Prior Art and All Other Material Evidence Was Before the Examiner**

The evidence in this case will show that GraphOn timely disclosed to the USPTO in connection with its patent applications all prior art relied on by the defendant in the *eBay* litigation.  The Information Disclosure Statements filed by GraphOn in connection with the '034 and '591 patents include lengthy lists of prior art, including all prior art cited by the defendant in the *eBay* litigation. GraphOn disclosed all material information to the USPTO with respect to each of the patents-in-suit and Plaintiffs cannot show an intent to deceive.[7]

---

[7] As noted previously, the evidence will show that GraphOn did not disclose the massive amount of cumulative prior art cited by AutoTrader in the *AutoTrader.com* litigation in the prosecution of the '591 patent. There was no duty to do so.

Moreover, as noted, any issues related to AutoTrader's best mode and written description defenses –file history(s), specification and claims – were already before the examiner during the prosecution of each of the patents-in-suit.

> **2.    The USPTO Was Aware of the Litigation and GraphOn's Filing of the Notice of Filing Patent Form with the Courts Constituted Notice to the USPTO of the *eBay* and *AutoTrader.com* Litigations**

The evidence will show that the USPTO was aware of the litigation involving the '367 family and specifically advised GraphOn's prosecution counsel of its awareness. The alleged failure to disclose the bare existence of litigation will be a non-issue at trial on the issue of either materiality or intent.

In addition, on March 26, 1999, the district court mailed to the USPTO Form AO 120 ("Report on the Filing or Determination of an Action Regarding Patent Infringement"), reporting to the USPTO the existence of the *eBay* litigation. Exhibit 3.  On November 22, 2005 and August 24, 2007, GraphOn's Forms AO 120 reporting the *AutoTrader.com* litigation were mailed to the USPTO by the district court. Exhibits 5-6.  Each of the AO 120 Forms included the docket number of the case, the date the case was filed as well as the names of the parties. *Id*. Consequently, notice of the *eBay* litigation and the *AutoTrader.com* litigation was provided to the USPTO and Plaintiffs' assertions are unfounded.[8] *See Omax Corp. v. Flow Intern. Corp.*, 2006 WL 3249191 *2 (W.D. Wa. 2006) (Clerk's Notice to the USPTO makes it "highly plausible" that examiner was aware of patent dispute concerning subject matter of patents).

Plaintiffs' assertion that GraphOn should have filed pleadings, motions and expert reports in the *AutoTrader.com* litigation with the USPTO in connection with the prosecution of the

'034 and '591 patents, is inconsistent with the case law and defies common sense.  Burying the patent office with too much information can itself constitute inequitable conduct.  See, e.g., *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Service, LLC*, 2007 WL 1394427, * 6 (N.D. Cal. 2007) (obfuscating relevant prior art by providing too much less relevant prior art may constitute inequitable conduct); *Golden Valley Microwave Foods Inc. v. Weaver Popcorn Co. Inc.*, 837 F.Supp. 1444, *aff'd* 11 F.3d 1072 (Fed. Cir. 1993) ("it is . . . a violation of the duty of candor and fair dealing . . . to bury" prior art within a series of less relevant prior art).  Providing the USPTO with irrelevant or cumulative pleadings, motions or expert reports filed in the *AutoTrader.com* litigation when there was no court adjudication of those issues would be tantamount to burying the USPTO with irrelevant argument.  GraphOn appropriately provided to the USPTO each and every piece of prior art cited by the defendant in the *eBay* litigation and all other material evidence related to AutoTrader's other invalidity defenses was before the examiners.  As such, GraphOn cannot be held to have withheld material information or intentionally deceived the USPTO.

### 3.  The '956 Application and the Proprietary Credit Card Processing Discussed Therein Are Not Material to the Patents-In-Suit

GraphOn intends to retain a person of ordinary skill in the art to analyze and testify regarding the materiality of the '956 application to the patents-in-suit.  Rounds Decl., ¶ 5.  At least with respect to the '538 patent, GraphOn's expert in the *AutoTrader.com* litigation concluded that the '956 application was not material because claims 2 and 3 of the '538 patent did not claim the secure credit card processing described in the '956 application.  Rounds Decl.,

---

[8] MPEP § 2001.06(c) requires that the litigation be reported to the "Patent and Trademark Office." *Id.*

GraphOn's Opposition to Motion for Early Hearing On Inequitable Conduct
3:10-CV-00604-EDL; 3:10-CV-01156-EDL

¶ 5; Exhibit 2, pp. 9-14.  Therefore, as John T. Goolkasian, Esq. concluded in the AutoTrader.com litigation, the best mode requirement does not apply to the secure credit card processing, making the '956 application and the proprietary methods described therein immaterial for purposes of the '538 patent.  Exhibit 2.  GraphOn expects that a similar conclusion applies to the other patents-in-suit and will retain appropriate experts related to that issue. Rounds Decl., ¶ 5.

Plaintiffs' allegations regarding inequitable conduct will prove to be without merit once the evidence is presented by each side at the appropriate time.  That time cannot be until after the Court has conducted a *Markman* hearing and the parties have had an opportunity to conduct discovery and retain experts regarding the patents-in-suit, and trial on the issue of infringement, invalidity and damages has occurred.

## IV. CONCLUSION

For the foregoing reasons, GraphOn respectfully requests that this Court deny Plaintiffs' Motion for an Early Hearing on Inequitable Conduct.

Dated:  June 23, 2010

By:  /s/ Michael D. Rounds

Michael D. Rounds
Melissa P. Barnard (*Pro Hac Vice*)
Adam Yowell (*Pro Hac Vice*)
WATSON ROUNDS
One Market-Steuart Tower Suite 1600
San Francisco, CA 94105
Telephone:  (415) 243-4090
Fax:          (415) 243-0226
Email:  mrounds@watsonrounds.com
Email:  mbarnard@watsonrounds.com
Email:  ayowell@watsonrounds.com

Attorneys for Defendant/Counter-claimant
GraphOn Corporation

## CERTIFICATE OF SERVICE

The undersigned certifies that, on this date, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: June 23, 2010

  /s/  Robert Hunter
An Employee of Watson Rounds