Kevin B. Collins (admitted *pro hac vice*)
Jeffrey M. Davidson (SBN 248620)
Winslow B. Taub (SBN 233456)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco California 94111-5356
Telephone:  (415) 591-6000
Facsimile:   (415) 591-6091
Email: kcollins@cov.com
         jdavidson@cov.com
         wtaub@cov.com

Attorneys for Plaintiff MySpace, Inc. and
Third-Party Defendant Fox Audience Network, Inc.

Christopher Kao (SBN 237716)
E-mail: CKao@perkinscoie.com
Brian Hennessy (SBN 226721)
E-mail: BHennessy@perkinscoie.com
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
Telephone: (650) 838-4300
Facsimile: (650) 838-4350

Attorneys for Plaintiff craigslist, Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYSPACE, INC., | ) **Case No. C 10-00604 EDL** |
| | ) **Case No. C 10-01156 EDL** |
| Plaintiff, | ) **Consolidated Actions** |
| | ) |
| vs. | ) **REPLY IN SUPPORT OF PLAINTIFFS'** |
| | ) **MOTION FOR AN EARLY HEARING** |
| GRAPHON CORPORATION, | ) **ON INEQUITABLE CONDUCT** |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| CRAIGSLIST, INC., | ) |
| | ) |
| Plaintiff, | ) **Date:  Thursday, July 15, 2010** |
| | ) **Time: 9:30 a.m.** |
| vs. | ) **Location: Courtroom E, 15th Floor** |
| | ) **Judge: Honorable Elizabeth D. Laporte** |
| GRAPHON CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

1    GraphOn's opposition fails to set forth any compelling reason why this Court

2 should delay a hearing on GraphOn's inequitable conduct.  Two of the four patents-in-suit were

3 litigated to the brink of trial in a prior action brought by GraphOn and defended by counsel for

4 MySpace here.  The two additional patents in this case are continuations sharing an identical

5 written description and similar claims.  Plaintiffs, who bear the burden of proof on inequitable

6 conduct, are prepared to try their inequitable conduct case now, based on the prosecution

7 histories of the patents-in-suit, other publicly available materials, and the discovery exchanged

8 in the earlier proceeding.  Judicial economy demands that, rather than litigating this case as

9 though the prior action had never happened, the proceedings in this case proceed in a

10 streamlined fashion based on the information already developed.

11    The Court clearly need not reach any conclusions on the merits of Plaintiffs'

12 allegations at this stage.  However, the fact that Plaintiffs have made a thorough proffer showing

13 that the asserted patents are unenforceable, and that GraphOn's response fails to explain the

14 pervasive non-disclosures to the Patent Office described in Plaintiffs' opening brief, should

15 inform the Court's discretion in granting an early hearing.  GraphOn does not deny that

16 Applicants intentionally did not disclose to the Patent Office the proprietary server that was the

17 best mode Applicants knew for charging a fee, as the asserted '538, '034, and '591 patents

18 claim.  GraphOn also does not deny that Applicants intentionally did not disclose the *eBay* and

19 *AutoTrader* cases despite their admitted duty to do so.  As discussed further herein, the excuses

20 GraphOn does offer are unpersuasive and ineffective as a matter of law.

21    Additionally, Plaintiffs have recently uncovered significant new facts regarding

22 GraphOn's inequitable conduct.[1]  In short, while the '940, '034, and '591 patents were pending

23

24
[1] As they indicated at the Case Management Conference, Plaintiffs have been performing a thorough investigation for additional allegations of inequitable conduct, and they sent GraphOn a proposed amended complaint including these allegations on June 29, as soon as it was ready.

25 GraphOn would not stipulate to the filing of the amended complaint if Plaintiffs referenced any of the content therein in these reply papers.  So that the Court would have all of the relevant

26 facts in deciding this motion, Plaintiffs have discussed these new allegations herein, and also filed a motion for leave to file the amended complaint.  Plaintiffs offered to allow GraphOn time

27 to review the new allegations and file a sur-reply, but GraphOn refused.  At bottom, Plaintiffs contend simply that there should be an early hearing on inequitable conduct, which would

28 (continued…)

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR AN EARLY HEARING ON INEQUITABLE
CONDUCT, Case Nos. C 10-00604 EDL & C 10-01156 EDL

1  before the Patent Office, the Applicants filed and were simultaneously prosecuting before 13

2  different examiners at least 23 other patent applications, each of which contained an identical

3  specification to each other and to the patents-in-suit and which claimed similar subject matter.

4  Not only did the Applicants fail to disclose these co-pending applications to the examiners

5  reviewing the '940, '034, and '591 patents, they also failed to disclose the multiple and repeated

6  rejections of the co-pending applications by other examiners and most of the prior art cited in

7  those rejections.  This is "examiner shopping" of the worst sort, and can only be explained by an

8  intent to deceive the Patent Office.  Plaintiffs are likewise prepared to go to an early trial

9  without further discovery on these allegations, because GraphOn can offer no excuse for its total

10  failure to keep the examiners of the '940, '034, and '591 patents apprised of the repeated

11  rejections of comparable continuation applications despite having — as the evidence will

12  show — actual, subjective knowledge of GraphOn's obligations to do so.

13          Simply put, GraphOn was able to acquire the patents-in-suit because Applicants

14  intentionally failed to disclose critical information to the Patent Office.  Rather than permitting

15  GraphOn to subject Plaintiffs to discovery and trial on every other issue first, this Court should

16  allocate an early one-day hearing so that Plaintiffs can present their well-developed evidence of

17  unenforceability.[2]  Appendix A proposes a schedule for proceeding that would permit GraphOn

18  to perform any discovery it desires in advance of the requested early hearing.  With respect to

19  _____

20  include all of the facts in support of that defense.  GraphOn will have ample time to prepare any
    explanation it has, but it would be inefficient to try different inequitable conduct allegations

21  separately, or to decide whether to have an early hearing without considering all of the theories
    that may be raised at such a hearing.

22  [2] GraphOn cites the concurring opinion of Chief Judge Rader in *Advanced Magnetic Closures,*

23  *Inc. v. Rome Fastener Corp.*, Nos. 2009-1102, 2009-1118, 2010 WL 2331169 (Fed. Cir. June
    11, 2010) for the proposition that "a trial on inequitable conduct should not be held at this time

24  and will require strict scrutiny when it is").  (Opp. at 13-14.)  On its face, Judge Rader's opinion
    — which in any event did not command a majority of the panel — addresses procedure at the

25  Federal Circuit, not this Court.  Moreover, Judge Rader made clear that in his view the Federal
    Circuit, and, *a fortiori*, this Court, should continue to address inequitable conduct under

26  "extreme facts such as those found in the present case."  2010 WL 2331169, at *13.  Plaintiffs
    respectfully submit that the inequitable conduct committed here is so egregious that it will

27  render the patents unenforceable under any applicable legal standard applied by the Federal
    Circuit.

28

claim construction, GraphOn has identified only a single term that could conceivably affect the inequitable conduct issues, and construction of that term, if it is even necessary, can take place in-line with the proposed hearing.

**I.      The Court Has the Authority to Hold an Early Hearing on Inequitable Conduct**

GraphOn concedes, as it must, that this Court has the discretion to order an early trial on inequitable conduct, and that multiple courts in this jurisdiction have done so.  Opp. at 8, 16; *see Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1213 (1987) ("The district court clearly did not abuse its discretion in trying Gardco's inequitable conduct claim first in this case. Such a separation is precisely the type contemplated by Rule 42(b)"); *see also* Mot. at 3 (collecting cases).  Given the particular circumstances present in this case, the Court should order an early hearing on inequitable conduct.

**II.     No Claim Construction Is Needed Prior to an Inequitable Conduct Hearing**

GraphOn claims that "the Court must first interpret the claims for the patents-in-suit in order to decide inequitable conduct" (Opp. at 11), but provides no legal or factual basis for its argument.  Judicial economy will be well served by holding an inequitable conduct hearing before holding comprehensive claim construction proceedings.

At the outset, GraphOn is incorrect as a matter of law.  For resolving claims of inequitable conduct, claim interpretation standards are the same as those used during the prosecution of a patent application at the Patent Office.  There, patent claims are given their *broadest reasonable construction* consistent with the specification.  *See, e.g.*, *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1314 (Fed. Cir. 2006) (citing 37 C.F.R. § 1.56(b) (2004)) (information is material if it helps to establish a prima facie case of unpatentability under the broadest reasonable construction standard).  Thus, any claim construction for purposes of the inequitable conduct inquiry relates not to the precise scope of the patent claims, but to their broadest reasonable construction.

As a factual matter, there are no actual claim construction issues relevant to the inequitable conduct allegations.  First, GraphOn failed to disclose to the Patent Office litigation involving patents that had identical specifications and similar claims to the continuation

1  applications that GraphOn was prosecuting at the time.  Indeed, GraphOn has asserted that the

2  claims of these patents (as they issued) read on the very same systems — those of the

3  Plaintiffs — as the earlier-issued patents.  There can be no claim construction that would render

4  litigation involving these patents — with identical specifications and claims that read on the

5  same systems — so immaterial to the prosecution of the later patents that GraphOn would be

6  relieved from its disclosure obligations.  GraphOn does not mention any such claim

7  construction, stating only that there "are most certainly other claim construction issues that will

8  arise as well."  (Opp. at 11.)

9          Second, in defending Applicants' failure to disclose the best mode of practicing

10  the charging claims of their purported invention, GraphOn indicates, incorrectly, that the Court

11  will need to "decide the issue of whether claims 2 and 3 [of the '538 patent] require secure

12  online credit card processing as discussed in the specification."  (*Id.*)   To the contrary,

13  Plaintiffs' arguments do not hinge on whether the claims require "secure online credit card

14  processing"; the claims of the '538 patent recite a method "wherein the user is charged for the

15  creation of the database entry" (claim 2) and "wherein the charge is applied to a user's credit

16  card" (claim 3).  Regardless of whether the claims are read to require simply charging a fee,

17  charging a fee by credit card, securely charging a fee by credit card, or securely charging a fee

18  by credit card online, Applicants failed to disclose the best mode of which they were aware for

19  doing so.  (For the same reason, the '956 application was clearly material to the prosecution of

20  the patents-in-suit, because it disclosed the best mode of practicing the charging claims of the

21  patents-in-suit).  The specification itself notes that the invention may be practiced "based on a

22  pay-for service model" involving "the user [entering] a credit card number," and states that

23  "such processing is preferably performed in accordance with a proprietary method developed by

24  the assignee."  *See* '538 patent (Ex. A to MySpace Compl., Dkt. No. 1-1), col. 10, ll. 6-15.

25  Thus, regardless of the scope of the "charging" claims of the patents, the best mode was not

26  disclosed.

27          Finally, to the extent the Court finds claim construction to be helpful, the parties

28  could readily brief the single claim construction issue identified by GraphOn on an expedited

1  basis either prior to or after the proposed early hearing.  There is no need to defer the inequitable

2  conduct case until after comprehensive claim construction briefing on a host of unrelated issues.

3  **III.     No Further Discovery Is Needed Prior to an Inequitable Conduct Hearing**

4         GraphOn also claims that it needs more discovery relating to inequitable conduct,

5  but this assertion is unpersuasive.  An early hearing on inequitable conduct can proceed without

6  any additional discovery, conserving the Court and the parties' resources.  Plaintiffs bear the

7  burden of proof on the inequitable conduct claims, so any risk from inadequate discovery falls

8  on them.  Moreover, GraphOn principally claims that "the AutoTrader case did not involve all

9  of the patents-in-suit that are before this Court today."  (Opp. at 12.)  But the two patents-in-suit

10 that were not part of the *AutoTrader.com* suit were prosecuted by Mr. Timothy Brisson, who is

11 currently (and has been throughout the relevant period of time) GraphOn's general counsel.

12 (*See* Supplemental Declaration of Jeffrey M. Davidson in Support of Plaintiffs' Motion for an

13 Early Hearing on Inequitable Conduct ("Supp. Davidson Decl."), Ex. 1, at 3 (GraphOn's Initial

14 Disclosures).)  It goes without saying that GraphOn has the unfettered ability to speak to Mr.

15 Brisson about his conduct in preparation for the early hearing.

16        GraphOn admits that "AutoTrader.com deposed various counsel who were

17 involved in the prosecution of the '538 and '940 patents, including GraphOn's general counsel

18 Timothy Brisson; Ken D'Alessandro and William Wilbar . . . Robert Irvine; Robert Worrall . . .

19 and . . . Frank Nicholas."  (Opp. at 6-7.)  However, GraphOn notes that it wishes to re-depose

20 four individuals, even though all of them were counsel for GraphOn or its predecessor and have

21 been deposed previously.[3]  (Opp. at 6-7.)  Moreover, each of these witnesses testified in prior

22 litigation that he had no recollection of the prosecution of the patents-in-suit.  (Supp. Davidson

23

24 [3] GraphOn indicates that it needs to depose William Wilbar, a former junior associate at the
25 Sierra Patent Group, Ltd. (who apparently now lives in Singapore), even though his deposition
   was taken in the *AutoTrader.com* litigation along with that of two other attorneys from the same
26 firm.  Although GraphOn did list many of the prosecuting attorneys as potential witnesses in the
   *AutoTrader.com* litigation, Mr. Wilbar was not among them.  (*See* Supp. Davidson Decl., Ex. 2,
27 (Exhibit A to Joint Final Pretrial Order, Plaintiff GraphOn Corporation's Identification of Trial
   Witnesses).)

28

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR AN EARLY HEARING ON INEQUITABLE
CONDUCT, Case Nos. C 10-00604 EDL & C 10-01156 EDL
5

Decl., Ex.3, at 43:5-7 (D'Alessandro Dep.) ("I personally . . . wasn't involved in the prosecution
of any of the patents."); Ex. 4, at 70:20-22 (Irvine Dep.) ("Q. What role did MBHB play in the
prosecution of this application? A. You know, I don't know."); Ex. 5, at 18:11-13 (Nicholas
Dep.) ("we didn't — as far as prosecution, I don't think there was much, if I remember right");
Ex. 6, at 26:12-13 (Worrall Dep.) (Q. Do you remember anything about this application? A. Not
a whole lot."); Ex. 7, at 10:1-4 (Wilbar Dep.) ("Are you prepared to testify on any of these
topics? A. I couldn't tell you, to tell you the truth. I mean, not really.").  While GraphOn is
certainly free to contact its own attorneys for whatever new explanations they may now be able
to remember three years later, Plaintiffs, as the parties bearing the burden of proof, do not
believe that further depositions of these individuals are necessary.

GraphOn further indicates that it "intends to rely upon [] experts to cover at least
the issues of materiality . . . and whether prosecution counsel acted reasonably in the
prosecution of the applications at issue."  (Opp. at 7.)  Although these "experts have not yet
been retained" (*id*.), GraphOn expects the "expert to opine regarding whether GraphOn's
disclosures met the standard of care" and to "explain why the '956 application is not material"
to the patents in suit (*id.* at 12-13), and further expects the expert "to provide helpful testimony"
for GraphOn (*id.* at 14-15).

Expert discovery on GraphOn's failure to disclose the '956 application and the
intentional concealment of the best mode of practicing certain claims of the patents-in-suit
however, was already completed in the *AutoTrader.com* litigation.  Moreover, no extensive
expert discovery is required regarding the failure to disclose prior litigations and litigation
materials (including motions for summary judgment of invalidity, a *Markman* ruling by another
District Court, and allegations of inequitable conduct), all of which directly relate to the
applications and patents at issue here.  Nor is expert testimony necessary to address whether
GraphOn's categorical failure to disclose co-pending continuation applications and numerous
rejections of similar claims constituted inequitable conduct.

In any case, in an effort to alleviate any concern that GraphOn needs more
discovery on its conduct and that of its agents, the Court could permit limited discovery on

specifically identified topics once an early hearing on inequitable conduct has been set. Plaintiffs respectfully submit that the Court may find it particularly convenient to hold the proposed early hearing on inequitable conduct close to the date of the hearing on Plaintiffs' motion for summary judgment, currently set for September 30. Appendix A contains a proposed schedule that would accommodate limited discovery and permit a tightly-focused and well-organized hearing to proceed on the issues of inequitable conduct.

## IV. GraphOn Has No Excuse for Its Failures of Disclosure

While the Court need not make any findings on the merits of the inequitable conduct case at this juncture, the merits should inform its discretion in determining whether to have an early hearing. Plaintiffs have made a thorough proffer of their inequitable conduct case, both by pleading it in detail (*see* MySpace Compl., ¶¶ 60-120 (Dkt. No. 1)), and in summary form in their Motion for an Early Hearing. Although GraphOn attempts to argue that its conduct does not rise to the level of inequitable conduct, GraphOn's opposition reveals the weakness of its position.

With respect to the failure to disclose prior litigation involving related patents, GraphOn argues that the Patent Office was aware of the lawsuits because the District Court — not GraphOn — sent form reports on the filing of the actions to an unspecified location in the Patent Office. But the District Court's disclosure does not as a matter of law relieve the Applicants of their independent obligations of disclosure. *See* MPEP § 2001.06(c) ("At a minimum, *the applicant* should call the attention of the Office to the litigation, the existence and the nature of any allegations relating to validity and/or 'fraud,' or 'inequitable conduct' relating to the original patent, and the nature of litigation materials relating to these issues. Enough information should be submitted to clearly inform the Office of the nature of these issues so that the Office can intelligently evaluate the need for asking for further materials in the litigation.") (emphasis added). Likewise, as discussed further below, GraphOn's post-allowance submission of two prior art references from the *eBay* litigation, in an undifferentiated group of 236 other references, could not have satisfied its obligation to provide "allegations relating to validity"

1   and to provide "[e]nough information . . . to clearly inform the Office of the nature of these

2   issues." *Id.*[4]

3           With respect to GraphOn's failure to disclose the best mode of practicing the

4   "charging" claims of the patents, GraphOn presents an expert opinion that under a particular

5   claim construction, it had no obligation to disclose the best mode of practicing those claims.

6   But the former Commissioner of Patents and Trademarks, the Honorable Gerald J. Mossinghoff,

7   has opined to the contrary, stating that "those substantively involved in the preparation and

8   prosecution of the '538 patent breached their duty of candor and good faith to the U.S. Patent

9   and Trademark Office in failing to disclose the best mode of the invention claimed in that

10  patent." (Supp. Davidson Decl., Ex. 8, ¶¶ 2, 59 (Mossinghoff Report).)  The issue is ripe for

11  this Court to determine.

12          In short, GraphOn is asserting patents that are tainted by an extensive failure to

13  disclose to the Patent Office highly material information.  Without seeking to explain these non-

14  disclosures, GraphOn  simply indicates that "Plaintiffs cannot show an intent to deceive."  (Opp.

15  at 17.)  Plaintiffs respectfully submit that the Court will readily be able to determine an intent to

16  deceive based on the knowledge of the Applicants, and the relevance and scope of the withheld

17  materials.  Based on this "unexplained violation of the duty of candor," and GraphOn's failure

18  to demonstrate that "an inference of wrongful intent should not be drawn," a finding of

19

20

21  _____

    [4] GraphOn cites *Omax Corp. v. Flow Int'l Corp.*, No. C04-2334L, 2006 WL 3249191, at *2
22  (W.D. Wash. 2006) for the proposition that the clerk's notice to the Patent Office "makes it
    'highly plausible' that examiner was aware of patent dispute."  (Opp. at 18.)  *Omax* holds no
23  such thing.  Instead, it notes only that it was plausible that the patent attorney had subjectively
    "concluded that the Clerk of Court's notification to the USPTO about the [] patent was
24  sufficient to make the patent examiner aware of patent disputes."  2006 WL 3249191, at *2.
    Here, GraphOn has not contended that its patent attorneys believed (incorrectly) that the Clerk's
25  notice was sufficient.  Nor has it contended that its patent attorneys, like those in *Omax*, were
    "unaware of [their] independent duty under MPEP § 2001.06(c)."  *Id.*  In any event, *Omax* was a
26  ruling on a motion for summary judgment, and the court simply held that there were fact issues
    with respect to the intent of the patent attorney.  If GraphOn does raise such a defense, the Court
27  will, in the proposed evidentiary hearing, have an opportunity to assess the credibility and intent
    of GraphOn's patent attorneys.

28

1   inequitable conduct will be warranted.  *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc*., 984

2   F.2d 1182, 1192 (Fed. Cir. 1993).

3   **V.      GraphOn's Opposition Makes a Series of Devastating Admissions**

4                  Further demonstrating that the Court would conserve resources by holding an

5   early hearing on inequitable conduct, GraphOn's opposition undermines its argument that the

6   patents are enforceable.  GraphOn notes that "[t]he duty to disclose under the MPEP only arises

7   if the prior application is related to the current patent" or in the same "patent family" (Opp. at

8   10-11) to support its argument that the material '956 application need not be disclosed during

9   the prosecution of the patents-in-suit.  In making this argument, however, GraphOn ignores the

10  fact that — as discussed above and in Plaintiffs' amended complaints that will be filed shortly

11  — GraphOn completely failed to disclose at least 23 separate continuation applications that not

12  only were "related to the current patent[s]" being prosecuted, but in fact had *identical*

13  specifications and similar claims.  GraphOn has thus admitted that its complete failure to

14  disclose those 23 separate continuation applications violated its duties as set forth in the MPEP.

15                 Second, in defending its failure to disclose the *eBay* and *AutoTrader* cases to the

16  Patent Office, GraphOn states:

17                    Burying the patent office with too much information can itself
                    constitute inequitable conduct.  See, e.g., *Reid-Ashman Mfg., Inc.*
18                  *v. Swanson Semiconductor Service LLC*, 2007 WL 1394427, * 6
                    (N.D. Cal. 2007) (obfuscating relevant prior art by providing too
19                  much less relevant prior art may constitute inequitable conduct);
                    *Golden Valley Microwave Foods Inc. v. Weaver Popcorn Co.,*
20                  *Inc*., 837 F.Supp. 1444, *aff'd* 11 F.3d 1072 (Fed. Cir. 1993) ("it
                    is . . . a violation of the duty of candor and fair dealing . . . to
21                  bury" prior art within a series of less relevant prior art).

22  (Opp. at 19.)  But "[b]urying the patent office with too much information" was exactly what

23  GraphOn did.  Rather than specifically identify the two key prior art references that had been the

24  subject of summary judgment motions in the *eBay* litigation to the patent office, GraphOn

25  instead buried those two references in a "lengthy list[] of prior art" (Opp. at 17) containing *236*

26  *other references*, without in any way informing the Patent Office that these two were

27  particularly important references or that they were the subject of motions for summary

28

judgment.  GraphOn thus inadvertently admits that it "violat[ed] the duty of candor and fair dealing" in burying the key prior art in a "lengthy list[]" of other, less relevant prior art.

**VI.     Conclusion**

For the reasons stated, Plaintiffs respectfully request that this Court grant an early one-day hearing on inequitable conduct, which should terminate this case, conserving the resources of the Court and the parties.

Dated:  July 1, 2010                                          Respectfully submitted,

COVINGTON & BURLING LLP

By:    s/ Kevin B. Collins[5]
       Kevin B. Collins

Attorneys for Plaintiff MYSPACE, INC., and Third-Party Defendant FOX AUDIENCE NETWORK, INC.

PERKINS COIE LLP

By:    s/ Christopher Kao
       Christopher Kao

Attorneys for Plaintiff CRAIGSLIST, INC.

---

[5] In compliance with General Order 45.X.B, I hereby attest that concurrence in the filing of the document has been obtained from each of the other signatories hereto.

## Appendix A

Plaintiffs propose the following schedule for the proposed early hearing on inequitable conduct:

| | |
|---|---|
| Substantial completion of document production and privilege log on issue of inequitable conduct | August 2, 2010 |
| Final day for fact discovery on issue of inequitable conduct | August 18, 2010 |
| Deadline for Rule 26(a)(3) pretrial disclosures for one-day hearing on inequitable conduct | September 1, 2010 |
| Deadline to file objections under Rule 26(a)(3) | September 1, 2010 |
| Deadline to file motions in limine for one-day hearing on inequitable conduct | September 1, 2010 |
| Parties submit pretrial order for one-day hearing on inequitable conduct | September 1, 2010 |
| Pretrial conference for one-day hearing on inequitable conduct | September 14, 2010 |
| One-day hearing on inequitable conduct | At the Court's convenience |