1
2
3
4
5
6
7
8                              IN THE UNITED STATES DISTRICT COURT
9                            FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   MYSPACE, INC.,                            No. C-10-0604 EDL
                                               No. C-10-1156 EDL
12               Plaintiff,                     Consolidated Actions
13          v.
                                               **ORDER DENYING WITHOUT**
14   GRAPHON CORPORATION,                       **PREJUDICE DEFENDANT'S MOTION**
                                               **TO REALIGN PARTIES AND**
15               Defendant.                     **GRANTING PLAINTIFFS' MOTION**
     _____/         **FOR EARLY  HEARING ON**
16                                             **INEQUITABLE CONDUCT**
     CRAIGSLIST, INC.,
17
                 Plaintiff,
18
            v.
19
     GRAPHON CORPORATION,
20
                 Defendant.
21   _____/

22          Before the Court are Defendant's Motion to Realign the Parties and Set Order of Proof and
23   Plaintiffs' Motion for Early Hearing on Inequitable Conduct.  On July 15, 2010, the Court held a
24   hearing on both motions.  For the reasons stated at the hearing and in this Order, Defendant's
25   Motion to Realign the Parties is denied without prejudice and Plaintiffs' Motion for Early Hearing
26   on Inequitable Conduct is granted.
27   **Motion to Realign the Parties**
28          Plaintiff MySpace filed its declaratory judgment complaint on February 10, 2010, involving
     U.S. Patent Nos. 6,324,538; 6,850,940; 7,028,034; and 7,269,591.  On March 17, 2010, Defendant

**United States District Court**
For the Northern District of California

1  filed an answer and a counterclaim seeking damages for infringement of the patents-in-suit.  Plaintiff

2  craigslist filed its declaratory judgment complaint on March 18, 2010, involving the same patents as

3  the <u>MySpace</u> action.  On April 8, 2010, Defendant filed an answer and counterclaim seeking

4  damages for infringement of the patents-in-suit.  craigslist filed a separate first amended complaint,

5  to which Defendant answered.  The cases were related on April 15, 2010, consolidated on May 14,

6  2010, and reassigned to this Court on June 10, 2010.

7       In this motion, Defendant seeks to realign the parties so that Defendant is designated as the

8  plaintiff and Plaintiffs are designated as the defendants.  In the alternative, Defendant seeks an order

9  changing the order of proof at trial.  Realignment of the parties is within the Court's discretion.  <u>See</u>

10  <u>Fresenius Medical Care Holdings v. Baxter International</u>, 2006 WL 1646110, * 1 (N.D. Cal. June

11  12, 2006); <u>Plumtree Software, Inc. v. Datamize</u>, 2003 WL 25841157 (N.D. Cal. Oct. 6, 2003).

12       Because this case is in its infancy, realignment of the parties is premature.  Therefore,

13  Defendant's Motion to Realign is denied without prejudice.  If Defendant brings a similar motion

14  closer to trial, the Court would consider changing the order of proof at trial and/or requiring the

15  parties to call themselves by their business names at trial rather than by "Plaintiff" or "Defendant."

16  **Motion for Early Hearing**

17       A court may order a separate trial "for convenience, or to expedite and economize."  Fed. R.

18  Civ. P. 42(b).  Factors to be considered when deciding whether to bifurcate a trial include:

19  complexity of issues, factual proof, risk of jury confusion, difference between the separated issues,

20  the chance that separation will lead to economy in discovery, and the possibility that the first trial

21  may be dispositive of the case.  <u>Calmar, Inc. v. Emson Research, Inc.</u>, 850 F. Supp. 861, 866 (C.D.

22  Cal. 1994).  Bifurcation should be ordered only when it will result in judicial economy and will not

23  unduly prejudice any party.  <u>Id.</u> at 865.  Whether and how to bifurcate trials is a matter left within

24  the sound discretion of the district court.  <u>See Shum v. Intel Corp.</u>, 499 F.3d 1272, 1276 (Fed. Cir.

25  2007).  Here, Plaintiffs argue that the Court should conduct an early hearing on the issue of

26  inequitable conduct.  Defendant opposes an early hearing.

27       At the July 15, 2010 hearing, the parties agreed that it is within the Court's discretion

28

whether to hold an early hearing on inequitable conduct.[1]  Courts have permitted an early hearing in some cases and declined to do so in others.  Compare, e.g., Agfa Corp. v. Creo Prods., Inc., 451 F.3d 1366, 1373 (Fed. Cir. 2006) (holding that trial court's decision to hold a bench trial on inequitable conduct did not preclude later bench trial on issue of patent's validity); Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1213 (Fed. Cir. 1987) (holding there was no abuse of discretion where trial court held bench trial on inequitable conduct prior to jury trial on infringement and validity); SanDisk Corp. v. STMicroelectronics, Inc., 2009 U.S. Dist. LEXIS 45931, at *9 (N.D. Cal. May 19, 2009) (finding that convenience and judicial economy would be best served by trial on inequitable conduct prior to jury trial on legal issues where a finding of inequitable conduct could moot the infringement claim, but a finding of no inequitable conduct could moot the Walker Process fraud claim), with, e.g., Informatica Corp. v. Business Objects Data Integration, 2007 WL 607792, *4 (N.D. Cal. Feb. 23, 2007) (trying inequitable conduct issues after jury trial); Visto Corp. v. Seven Networks, Inc., 2006 WL 3741891, at *1 (S.D. Tex. Dec. 19, 2006) (holding bench  trial on inequitable conduct after jury trial on legal issues); Mag Instrument, Inc. v. J. Baxter Brinkmann, 123 F.R.D. 543, 547 (N.D. Tex. 1988) ("Moreover, a prior trial of the inequitable conduct defense would not serve any of the purposes of Rule 42(b). Because this defense involves the extremely vital issue of patent enforceability, the trial is likely to occupy a great deal of time. If the defense is found not to be meritorious, then this time would be wasted.").  The Court must examine the particular circumstances of this case to determine whether an early hearing is appropriate.

In determining whether to hold an early hearing on Plaintiffs' inequitable conduct claim, the Court has examined whether Plaintiffs appear to have potentially meritorious arguments regarding inequitable conduct, although the Court has not reached a decision, even preliminarily, on the ultimate merits.  On balance, the Court exercises its discretion to grant Plaintiffs' motion and hold an early hearing on inequitable conduct, but on a less rapid schedule than originally proposed by

---

[1]     The parties also agreed that the Court's decision on this issue did not implicate the Seventh Amendment right to jury trial in this case.

Plaintiffs.[2]

On the whole, Plaintiffs' inequitable conduct claim does not appear to be a mere kneejerk reaction to Defendant's assertions of patent infringement. Plaintiffs argue that Defendant has engaged in inequitable conduct in three ways. First, Plaintiffs argue that Defendant failed to disclose related litigation to the Patent and Trademark Office ("PTO") during prosecution of the patents-in-suit. See Nilssen v. Osram Sylvania, Inc., 504 F.3d 1223, 1234 (Fed. Cir. 2007) ("It is clear from the language of [Manual of Patent Examining and Procedure] § 2001.06(c) that the existence of the litigation itself is material information that an examiner needs to have. It is important because it signals the examiner that other material information relevant to patentability may become available through the litigation proceedings."). For example, Plaintiffs allege that the patent applicants failed to disclose to the PTO the existence of litigation that Defendant's predecessor brought against eBay, Network Engineering Software v. eBay, C-99-1433 MJJ (BZ) (N.D. Cal., filed March 23, 1999), failed to disclose prior art references until after the first patent asserted in this case was allowed, and then buried the references within 236 other references, and never disclosed any eBay litigation materials. Compl. ¶¶ 91-105; Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., LLC, 2007 WL 1394427, at *6-7 (N.D. Cal. May 10, 2007) (obscuring prior art by burying it among voluminous other less relevant prior art may constitute inequitable conduct).

Defendant argues that it disclosed lengthy lists of prior art for the '034 and '591 patents, including all prior art cited by the defendant in the eBay litigation, in its Information Disclosure Statements filed in connection with the '034 and '591 patents. Defendant also states that the PTO was aware of the eBay case because the district court submitted the PTO's Report on Filing or Determination of an Action Regarding Patent Infringement form. However, the filing of a Report on Filing or Determination of an Action Regarding Patent Infringement may potentially be insufficient

[2]   Defendant has provided the Court with an order from the Eastern District of Texas in GraphOn Corp. v. Classified Ventures, LLC, et al., Case No. 2:08-CV-097, in which the court denied a similar motion for an early hearing on inequitable conduct brought by the defendant in that case which was represented by the same counsel as the defendant in this case. See Rounds Decl. Ex. 7. The Court, however, has evaluated the motion under the circumstances of this case and has reached a different conclusion.

United States District Court
For the Northern District of California

1  to constitute disclosure based on guidance contained in the Manual of Patent Examining and

2  Procedure. <u>See</u> Manual of Patent Examining and Procedure ("MPEP") § 2001.06(c) ("At a

3  minimum, the applicant should call the attention of the Office to the litigation, the existence and the

4  nature of any allegations relating to validity and/or 'fraud,' or 'inequitable conduct' relating to the

5  original patent, and the nature of litigation materials relating to these issues.  Enough information

6  should be submitted to clearly inform the Office of the nature of these issues so that the Office can

7  intelligently evaluate the need for asking for further materials in the litigation.").  Moreover,

8  Plaintiffs note that the form Report is completed by a court clerk, not a lawyer, from the court in

9  which a patent infringement case is filed (<u>see</u> Docket No. 5), and argue that the Report does not

10 become part of the file history at the PTO, so disclosure of the prior litigation on the form does not

11 satisfy Defendant's disclosure obligations.

12        Defendant responds that a court clerk's notice to the PTO makes it "highly plausible" that the

13 examiner was aware of a pending patent dispute.  <u>Omax Corp. v. Flow Int'l Corp.</u>, 2006 WL

14 3249191, at *2 (W.D. Wash. Nov. 7, 2006).  However, if Defendant did not provide material

15 information to the PTO other than the court's notice, it may not have satisfied its disclosure

16 obligations.

17        Second, Plaintiffs argue that Defendant intentionally failed to disclose to the PTO the best

18 mode of practicing the claimed invention.  <u>See</u> <u>Consol. Aluminum Corp. v. Foseco Int'l Ltd.</u>, 910

19 F.2d 804, 807-09 (Fed. Cir. 1990) ("Because disclosure of the best mode is statutorily required, <u>see</u>

20 35 U.S.C. § 112, failure to disclose the best mode is inherently material and, we believe, reaches the

21 minimum level of materiality necessary for a finding of inequitable conduct.").  Specifically, the

22 patents-in-suit state:

23        Although various methods of processing credit card transaction on-line have been
          proposed, with various degrees of attendant security, such processing is preferably
24        performed in accordance with a proprietary method developed by the assignee to
          provide the highest level of security possible.
25

26 <u>See</u> '538 patent, col. 10, ll. 11-16; '940 patent, col. 10, ll. 15-20; '034 patent, col. 10, ll. 20-25; '591

27 patent, col. 10, ll. 21-26.  Plaintiffs argue that the patents never identify the preferable method.

28        John Goolkasian, Defendant's expert in the prior case by Defendant against <u>Autotrader.com</u>,

                                        5

United States District Court
For the Northern District of California

1    opined that secure pay-for-service is not an element of the claimed invention, so no best mode

2    requirement is necessary.  See Rounds Decl. Ex. 2 at ¶ 31.  Further, even if secure pay-for-service is

3    an element of the claim, Defendant's expert opined that the best mode was disclosed in the

4    specification, and that the best mode requirement was met here where the information in the

5    specification is sufficient to enable a person skilled in the art to use the best mode.  See id.

6         Plaintiffs' expert, however, has opined to the contrary.  Supp. Davidson Decl. Ex. 8 at ¶ 59.

7    For example, Plaintiffs' expert points to deposition testimony of one of the named inventors of the

8    '538 patent in which he testified that the combination of a secure transaction server and a firewall

9    provided the best servicing.  Supp. Davidson Decl. Ex. 8 at ¶ 55.

10        On its own, Plaintiffs' argument that Defendant failed to disclose the best mode does not

11   necessarily support an early hearing on inequitable conduct because evidence going to the best mode

12   analysis will go not only to Plaintiffs' inequitable conduct defense, but also to the validity issue.

13   Thus, the savings of judicial resources would not be great.  However, when combined with

14   Plaintiffs' other arguments in support of inequitable conduct, the best mode argument adds weight to

15   a decision to hold an early hearing.

16        Third, Plaintiffs argue that Defendant failed to disclose material co-pending applications to

17   the examiners in the patent-in-suit.  See McKesson Info. Solutions v. Bridge Med., Inc., 487 F.3d

18   897, 917-19 (Fed. Cir. 2007)  ("Patent disclosures are often very complicated, and different

19   examiners with different technical backgrounds and levels of understanding may often differ when

20   interpreting such documents. Although examiners are not bound to follow other examiners'

21   interpretations, knowledge of a potentially different interpretation is clearly information that an

22   examiner could consider important when examining an application.") (internal citation omitted).

23   For example, Plaintiffs argue that Defendant failed to disclose the '956 application, which they

24   argue was material and had previously been rejected, to the patent examiners in the patents-in-suit,

25   even though both the application and the patents-in-suit involved a method of charging users' credit

26   cards over the internet.  As described above, Defendant's expert in the Autotrader.com litigation

27   opined at least with respect to the '538 patent, that the '956 application was not material because

28   claims 2 and 3 of the '538 patent did not claim the secure credit card processing described in the

6

1    '956 application. Rounds Decl. Ex. 2 at ¶¶ 25-31. Defendant expects similar conclusions as to the

2    other patents-in-suit. However, if Defendant improperly failed to disclose the '956 application and

3    the application was material, a court could find inequitable conduct.

4         In short, Plaintiffs' inequitable conduct claim appears to raise potentially significant issues,

5    and these issues are further developed than is typical at this early stage of the case because of the

6    prior litigation over the patents-in-suit. Thus, a relatively early hearing on inequitable conduct is

7    appropriate under the circumstances. There are, however, several factors that weigh in the Court's

8    decision as to the timing of the hearing.

9         Defendant argues that extensive claim construction must take place prior to a hearing on

10   Plaintiffs' claims of inequitable conduct, so that the Court can determine what is and is not material

11   in connection with disclosure to the PTO. See Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 963

12   (Fed. Cir. 2001) ("The extent of information that an inventor must disclose depends on the scope of

13   the claimed invention."); MPEP § 2001.06(c) ("Where the subject matter for which a patent is being

14   sought is or has been involved in litigation, the existence of such litigation and any other material

15   information arising therefrom must be brought to the attention of the U.S. Patent and Trademark

16   Office."); Allvoice Computing PLC v. Nuance Communications, 504 F.3d 1236, 1243 (Fed. Cir.

17   2007) ("Because the claims represent "the subject matter which the applicant regards as his

18   invention," subject matter outside the scope of the claims also falls outside the scope of the best

19   mode requirement."). For example, Defendant argues that the Court must interpret certain claims

20   for at least three of the patents-in-suit in order to decide whether Defendant engaged in inequitable

21   conduct by failing to disclose the '956 application. Furthermore, Defendant argues that before the

22   Court can determine whether Defendant violated the best mode requirement by failing to disclose

23   the '956 application, the Court must determine whether the best mode requirement even applies to

24   the secure credit card processing described in the specification. Defendant also notes that the Texas

25   court in the Autotrader.com litigation construed claims from two patents-in-suit (the '538 and '940

26   patents) , but did not decide the issue of whether claims 2 and 3 of the '538 patent require secure

27   online credit card processing. See Opp. at 11 (citing Def.'s Ex. 1 at 2). Defendant also argues that

28   "most certainly other claim construction issues that will arise as well." Opp. at 11.

**United States District Court**
For the Northern District of California

1    Plaintiffs counter that claim construction is not necessary because claims are given their

2   broadest reasonable construction consistent with the specification in the context of determining

3   materiality.  See Digital Control, Inc. v. Mach. Works, 437 F.3d 1309, 1314 (Fed. Cir. 2006).

4   Moreover, Plaintiffs argue that claim construction is not necessary to decide some of the inequitable

5   conduct issues raised in this case because Defendant's failure to disclose to the PTO litigation

6   involving patents with identical specifications and similar claims to the continuation applications at

7   issue here that Defendant was prosecuting at the time is material regardless of how the claims are

8   construed.  Plaintiffs also argue that the construction of claims 2 and 3 of the '538 patent is not

9   necessary because regardless of whether the claims are read to require "simply charging a fee,

10  charging a fee by credit card, securely charging a fee by credit card, or securely charging a fee by

11  credit card online," Defendant failed to disclose the best mode of practicing the claims.  Reply at 4.

12   It appears to the Court that while some claim construction may perhaps be necessary, it will

13  not be extensive.  Further, the hearing can be scheduled so as to permit limited claim construction

14  before or in conjunction with the inequitable conduct hearing.

15   The Court is also not convinced by Defendant's argument that extensive fact and expert

16  discovery is necessary prior to a hearing on inequitable conduct.  Defendant argues that it may need

17  to depose former patent prosecution attorneys William Wilbar, who resides in Singapore, Robert

18  Irvine, Robert Worrall and Frank Nicholas.  Defendant argues that the depositions taken by the

19  plaintiff's counsel in the Autotrader.com litigation did not address the inequitable conduct issues in

20  this case because only the non-disclosure of the '956 application and file history was at issue in the

21  Texas case.  Plaintiffs, however, have provided evidence when these four individuals were deposed

22  in connection with the Autotrader.com litigation, none of them were particularly knowledgeable

23  about the prosecution of the patents-in-suit.  See Supp. Davidson Decl. Ex. 4 at 70 (Irvine Depo.)

24  ("Q: What role did MBHB play in the prosecution of this application? A: You know, I don't

25  know."); Ex. 5 at 18 (Nicholas Depo.) ("we didn't -- as far as prosecution, I don't think  there was

26  much, if I remember right."); Ex. 6 (Worrall Depo.) ("Q: Do you remember anything about this

27  application? A: Not a whole lot."); Ex. 7 (Wilbar Depo.) ("Q: Are you prepared to testify on any of

28  these topics? A: I couldn't tell you, to tell the truth, I mean, not really.").  The Court is mindful of

1   Defendant's argument that only two of the patents-in-suit in this case were at issue in

2   Autotrader.com, but the two patents that were not part of the Autotrader.com litigation were

3   apparently prosecuted by Timothy Brisson, who was and is Defendant's general counsel.  See Supp.

4   Davidson Decl. Ex. 1 at 3.  Thus, Defendant is free to speak to Mr. Brisson at its convenience in

5   preparation for an inequitable conduct hearing.

6        Defendant also argues that it needs to engage in expert discovery prior to an inequitable

7   conduct hearing on the issues of the materiality of the prior art to the '956 application, as well as

8   whether prosecution counsel acted reasonably in the prosecution of the applications at issue.  See

9   Rounds Decl. ¶ 5.  Plaintiffs argue that expert discovery regarding Defendant's failure to disclose

10  the '956 application and the intentional concealment of the best mode of practicing certain claims of

11  the patents-in-suit was completed in the Autotrader.com case, and that no additional expert

12  testimony is necessary regarding the failure to disclose prior litigations and litigation materials, all

13  of which relate to the applications and patents at issue here.  In any event, because the Court will set

14  the hearing on a less accelerated schedule than originally proposed by Plaintiffs, there will be some

15  time for limited focused fact and expert discovery on the relevant issues.

16       One special factor bearing on the timing as well as potentially the outcome of any hearing on

17  inequitable conduct is the pendency of the substantive question of the appropriate standard to apply

18  at such a hearing before the Federal Circuit sitting en banc.  Therasense, Inc. v. Becton, Dickinson &

19  Co., 593 F.3d 1289 (Fed. Cir. 2010).[3]  Thus, it is possible that the current standard for determining

20  the issue of inequitable conduct could be significantly revised in the near future.  According to the

21  parties, the en banc hearing for Therasense is scheduled for November 9, 2010.  In the interest of

22  judicial economy, the Court is not inclined to decide the inequitable conduct issues in this case prior

23  _____

24       [3]    The Federal Circuit sought briefing on the following issues: "1. Should the materiality-
intent-balancing framework for inequitable conduct be modified or replaced? 2.  If so, how?  In
25  particular, should the standard be tied directly to fraud or unclean hands?  If so, what is the appropriate
standard for fraud or unclean hands? 3.  What is the proper standard for materiality?  What should the
26  United States Patent and Trademark Office's rules play in defining materiality?  Should a finding of
materiality require that but for the alleged misconduct, one or more claims would not have issued? 4.
27  Under the circumstances is it proper to infer intent from materiality? 5.  Should the balancing inquiry
(balancing materiality and intent) be abandoned? 6.  Whether the standards for materiality and intent
28  in other federal agency contexts or at common law shed light on the appropriate standards to be applied
in the patent context." Therasense, 2010 WL 1655391, at *1 (Fed. Cir. Apr. 26, 2010) (internal citations
omitted).

**United States District Court**
For the Northern District of California

1  to the Federal Circuit's en banc decision.

2        On balance, the Court exercises its discretion to hold a hearing on inequitable conduct prior

3  to the jury trial on the legal claims in this case.  Accordingly, Plaintiffs' Motion for Early Hearing

4  on Inequitable Conduct is granted.  However, the Court believes that having the benefit of the

5  Federal Circuit's decision in Therasense prior to holding the hearing on inequitable conduct would

6  serve judicial economy as well as the efficient use of the parties' resources.  Although the Court

7  cannot predict when the Federal Circuit will issue its ruling, the Court will schedule the inequitable

8  conduct  hearing to begin on January 18, 2011 at 8:30 a.m.  A pre-hearing conference shall be held

9  on January 11, 2011 at 2:00 p.m.  The parties shall meet and confer and jointly propose pretrial

10  deadlines, including, if necessary, a schedule for claim construction prior to or as part of the hearing,

11  and limited fact and expert discovery.  The Court is also mindful that the parties disagree on the

12  number of days that will required for the hearing.  The parties should also meet and confer to

13  propose a realistic number of days for the hearing.  The parties' joint proposals shall be filed no later

14  than August 20, 2010.

15        The Court notes that the January 18, 2011 hearing may be continued if the Federal Circuit

16  has not issued its decision in Therasense.  The Court also notes that it currently has several jury

17  trials scheduled throughout January and February 2011, which may necessitate continuing the

18  hearing on inequitable conduct.

19        **IT IS SO ORDERED.**

20  Dated: August 5, 2010

                                *Elizabeth D. Laporte*

21                                  ELIZABETH D. LAPORTE
                                United States Magistrate Judge

22

23

24

25

26

27

28